IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DELPHX CORPORATION** | : | **CIVIL ACTION** |
| v. | : | NO. 22-877 |
| **LARRY E. FONDREN** | : | |

## ORDER - MEMORANDUM

**AND NOW**, this 27th day of April 2022, upon considering Defendant's Motion to Dismiss (ECF Doc. No. 15), Plaintiff's Response (ECF Doc. No. 16), and for reasons below, it is **ORDERED** Defendant's Motion to Dismiss (ECF Doc. No. 15) is **DENIED** requiring he file an Answer by **May 11, 2022.**

### *Analysis*

DelphX Corporation allegedly developed two proprietary securities products known as collateralized put options and collateralized reference notes.[1] Larry E. Fondren signed an employment agreement in 2017 to serve as DelphX's Chief Executive Officer.[2] Mr. Fondren agreed to "[s]erve DelphX 'faithfully'; to 'devote his entire working time, attention, energy and skill to his employment and the benefit and business of [DelphX]'; and to 'promote its interests.'"[3] DelphX alleges Mr. Fondren agreed he would not use DelphX's proprietary information "for his own benefit during the course of his employment"; from using trade secrets and other patentable inventions forever; and from using "Confidential Information" during his employment and for five years thereafter.[4] Mr. Fondren also agreed not to compete or interfere with DelphX and its contracts for one year following his termination.[5] Mr. Fondren agreed products he developed while

working for DelphX "belonged to DelphX."[6] DelphX replaced Mr. Fondren as chief executive officer in April 2019, but he remained on its board of directors.[7]

Mr. Fondren sued DelphX and its Canadian parent, DelphX Capital Management ("DelphX Management"), in the Chester County Court of Common Pleas in March 2021.[8] Mr. Fondren claimed DelphX breached the employment agreement by underpaying him, terminating him without cause, and failing to pay severance.[9] He claims he developed products unrelated to DelphX's intellectual property following the post-termination confidentiality period, yet DelphX is claiming it owns Mr. Fondren's products to harm his business prospects and reputation.[10] Mr. Fondren sued DelphX for breach of contract and declaratory judgment, and sued both DelphX and its parent DelphX Management for intentional interference with contractual relations and defamation.[11]

DelphX did not timely answer Mr. Fondren's claims. The state court entered default judgment against DelphX.[12] The state court denied DelphX's motion to set aside the default.[13] DelphX appealed, the Pennsylvania Superior Court heard argument on March 16, 2022, and the Superior Court is presently preparing its decision.[14]

Mr. Fondren's state-court claims against DelphX Management proceeded in Chester County. DelphX Management counterclaimed against Mr. Fondren for breaches of fiduciary duty, tortious interference with contractual relations, civil conspiracy, breach of the implied covenant of good faith and fair dealing under Pennsylvania law, and breach of fiduciary duty under Canadian law.[15] The parties began discovery in the Fondren-DelphX Management case, but the state court stayed the action pending the Superior Court's decision on DelphX's appeal from the entry of default.

DelphX (not DelphX Management) now seeks remedies in this Court invoking our diversity subject matter jurisdiction. DelphX sues Mr. Fondren for breaching his employment contract and fiduciary duties by using DelphX's proprietary information for his own benefit; diluting the value of DelphX's information by creating a new company using DelphX's products; marketing DelphX's products through this new company; attempting to sell DelphX's products to companies with whom DelphX negotiated; hiring a DelphX consultant to work for him; marketing DelphX-developed securities as his own; and engaging in other bad-faith conduct.[16]

### A.     We deny Mr. Fondren's first-filed and preclusion arguments.

Mr. Fondren moves to dismiss arguing the first-filed rule bars DelphX's claims because the state action occurred first and issue preclusion and claim preclusion bar DelphX's claims.[17] We deny his motion based on these arguments. The first-filed rule does not apply and Mr. Fondren fails to carry his burden to show issue preclusion or claim preclusion apply.

#### 1.  The first-filed rule does not apply.

Mr. Fondren argues the first-filed rule bars DelphX's claims here. We disagree because the first-filed rule applies only to concurrent federal actions.

The first-filed rule requires "[i]n all cases of *federal* concurrent jurisdiction, the court which first has possession of the subject must decide it."[18] The first-filed rule "encourages sound judicial administration and promotes comity among *federal courts* of equal rank."[19] Judges must analyze the first-filed rule, an abstention doctrine, mindful of their "virtually unflagging obligation" to exercise their jurisdiction.[20]

We decline to apply the first-filed rule because it does not apply to concurrent state and federal cases and abstaining would violate our obligation to exercise jurisdiction. Federal judges routinely reject attempts to apply the first-filed rule where a state action precedes a federal action.[21]

In *Spellman v. Express Dynamics, LLC*, Judge Walls thoroughly explained why the first-filed rule does not apply based on a first-filed state action: It would violate the Supreme Court's directive "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."[22]

We agree. The first-filed rule promotes comity among the federal courts, not federal and state courts.[23] Comity between federal and state courts does not permit federal judges to ignore their congressionally mandated obligation to exercise jurisdiction. Our Court of Appeals has never applied the doctrine to concurrent federal and state proceedings. The Court of Appeals for the Eleventh Circuit did so in 1982,[24] but we are persuaded by the repeated criticism of its decision over the past forty years.[25] We will not follow the court of appeals's analysis from forty years ago mindful of our Court of Appeals's recent reminder district court judges have a "virtually unflagging obligation" to exercise their jurisdiction when able.[26] The first-filed rule does not bar DelphX's claims.

### 2. Mr. Fondren does not show a basis for issue or claim preclusion.

Mr. Fondren next argues issue preclusion and claim preclusion bar DelphX's claims before us. We disagree because Mr. Fondren admits he does not carry his burden to show issue preclusion or claim preclusion apply.

"Issue preclusion, formerly titled collateral estoppel, proscribes relitigation when the identical issue already has been fully litigated."[27] Issue preclusion requires four elements:

(1) The identical issue was decided in a prior adjudication;

(2) There was a final judgment on the merits;

(3) The party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and

(4) The party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question.[28]

"Claim preclusion, often called res judicata, is broader [than issue preclusion] in effect and prohibits reexamination not only of matters actually decided in the prior case, but also those that the parties might have, but did not, assert in that action."[29] Claim preclusion requires "a final judgment on the merits."[30] In addition to a final judgment on the merits, the party asserting claim preclusion must prove four elements:

(1) Identity of issues;

(2) Identity of causes of action;

(3) Identity of persons and parties to the action; and

(4) Identity of the quality or capacity of the parties suing or sued.[31]

Mr. Fondren admits he does not prove either defense, which alone prevents us from granting his motion because Mr. Fondren has the burden to prove them. Claim preclusion and issue preclusion are affirmative defenses which Mr. Fondren must prove.[32] The defenses fail "if the movant fails to establish any of the elements of the defense[s]."[33] Mr. Fondren fails to establish the principal element of the defenses—a final judgment on the merits—because he thrice admits no final judgment has been rendered against DelphX in the state action.[34] Mr. Fondren argues claim preclusion or issue preclusion will apply only once a final judgment is rendered in the state action. But a final judgment is required for claim preclusion or issue preclusion to apply today. We cannot make Mr. Fondren's arguments for him. We must deny his motion without prejudice to him reraising issue preclusion or claim preclusion at a later stage. We express no view at this stage regarding whether a final judgment has indeed been rendered in the state court.

Mr. Fondren concedes issue preclusion and claim preclusion do not apply, but argues we should stay this litigation "pending final judgment" in the state court.[35] We decline for two reasons.

5

First, staying this action would prejudice DelphX. It would force DelphX to wait helplessly while the final element of Mr. Fondren's affirmative defense ripens. Second, staying this action would essentially make the first-filed rule apply based on first-filed state actions. We would only stay this action based on comity concerns or efficient judicial administration. But those factors apply only to concurrent federal actions, not concurrent state and federal actions.[36] This action will proceed.

### B. DelphX adequately pleads breach of contract, breach of fiduciary duty, and tortious interference with prospective contractual relations.

Mr. Fondren also seeks to dismiss arguing DelphX fails to state its claims as a matter of law.[37] We disagree.

#### 1. DelphX pleads Mr. Fondren breached a contract.

DelphX pleads Mr. Fondren breached a contract. "[T]hree elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages."[38] DelphX pleads Mr. Fondren and DelphX signed a contract and attached the signed and counter-signed contract to its Complaint.[39] DelphX alleges Mr. Fondren competed with DelphX, diluted its value, and sold its confidential information, among other things, during a contractual restrictive period following his termination.[40] Mr. Fondren asks us to make factual determinations counter to what DelphX pleaded, which is inappropriate at this stage.[41] DelphX pleads the breach caused it damages.[42] While DelphX's lack of specificity as to the damages Mr. Fondren's breach caused might become an issue later in this litigation,[43] it does not warrant dismissal at this stage.

#### 2. DelphX pleads Mr. Fondren breached fiduciary duties.

DelphX also adequately pleads Mr. Fondren breached his fiduciary duties. DelphX argues—and Mr. Fondren does not challenge—Delaware law applies to its fiduciary duty claims

under the internal affairs doctrine, so we will apply Delaware law at this stage without prejudice to Mr. Fondren challenging choice of law.[44]

"To establish liability for the breach of a fiduciary duty, a plaintiff must demonstrate that the defendant owed [it] a fiduciary duty and that the defendant breached it."[45] DelphX pleads Mr. Fondren owed fiduciary duties of care and loyalty as DelphX's chief executive officer and director.[46] DelphX pleads Mr. Fondren violated his fiduciary duties in two ways.

First, DelphX pleads Mr. Fondren breached his fiduciary duty of loyalty through self-dealing. DelphX's use of the term "self-dealing" invokes a breach of the duty of loyalty. "[T]he duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally."[47] DelphX pleads Mr. Fondren breached this duty by, among other things, using DelphX's confidential information for his own benefit, sabotaging DelphX's business opportunities, and creating a company to compete with DelphX.[48]

Second, DelphX pleads Mr. Fondren breached fiduciary duties through usurping corporate opportunities. To plead usurpation, "a plaintiff must plead that the fiduciary has seized for himself an opportunity that, because of its nature, loyalty dictates should have been presented to his corporation."[49] An usurpation claim requires four elements:

(1) The corporation is financially able to exploit the opportunity;

(2) The opportunity is within the corporation's line of business;

(3) The corporation has an interest or expectancy in the opportunity; and

(4) By taking the opportunity for his own, the corporate fiduciary will thereby be placed in a position inimical to his duties to the corporation.[50]

DelphX pleads an usurpation claim. DelphX pleads Mr. Fondren took opportunities which rightly belonged to DelphX for himself by, among other things, using an existing company to

7

market securities which belonged to DelphX for his benefit.[51] These opportunities are in line with DelphX's business because they are the same business. We may infer DelphX could have exploited these opportunities because it pleads it has "invested substantial time and capital into" developing its securities products.[52]

Mr. Fondren argues DelphX does not plead he owed DelphX fiduciary duties because DelphX fired Mr. Fondren. We disagree. DelphX pleads it discovered Mr. Fondren's breaches in "late 2020," after Mr. Fondren served as chief executive officer.[53] And DelphX pleads Mr. Fondren self-dealt and usurped corporate opportunities "notwithstanding his contractual and fiduciary duties."[54] These allegations suffice today.

### 3. DelphX pleads a tortious interference claim.

DelphX also pleads a tortious interference with prospective contractual relations claim. "To prove tortious interference with an existing or prospective contract under Pennsylvania law, a plaintiff must prove four elements: (1) the existence of a contractual relationship or prospective contractual relationship between the plaintiff and another party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship or preventing the relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct."[55] Mr. Fondren challenges only the second element.

DelphX pleads facts from which we can plausibly infer Mr. Fondren's intent to harm DelphX by interfering with prospective relations. DelphX pleads "contractual negotiations to do business with two different entities: (1) The Carlyle Group, and (2) Fortress Investment Group."[56] It pleads Mr. Fondren contacted these entities to sell DelphX's proprietary information for his own benefit.[57] DelphX pleads Mr. Fondren tried to sell DelphX's proprietary information to Carlyle

and Fortress.[58] These allegations, coupled with DelphX's other allegations of Mr. Fondren's breaches, allow us to infer Mr. Fondren interfered intending to harm DelphX.

We deny Mr. Fondren's Motion to dismiss based on the pleading and his present arguments without prejudice to revisiting proofs after discovery. He must file a timely Answer and proceed into discovery to resolve these issues before us consistent with Federal Rule of Civil Procedure 1.



KEARNEY, J.

---

[1] ECF Doc. No. 1 ¶¶ 15–16.

[2] *Id.* ¶ 25.

[3] *Id.* ¶ 27 (quoting Ex. A § 3.1).

[4] *Id.* ¶ 29 (citing Ex. A § 5.2).

[5] *Id.* ¶¶ 30–31 (citing Ex. A § 5.1).

[6] *Id.* ¶ 32 (citing Ex. A §§ 5.3; 5.4; 5.6).

[7] *Id.* ¶¶ 34–35.

[8] *See* ECF Doc. No. 15-3.

[9] *Id.* ¶¶ 12–17.

[10] *Id.* ¶¶ 18–20.

[11] *Id.* ¶¶ 38–61.

[12] *See* ECF Doc. No. 7 at 2.

[13] *Id.*

[14] *Id.*

[15] ECF Doc. No. 15-1 at 20–25.

[16] *Id.* ¶ 37.

---

[17] *See* ECF Doc. No. 15-2.

[18] *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988) (emphasis added) (alteration in original) (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)), *aff'd*, 493 U.S. 182 (1990).

[19] *Id.* (emphasis added).

[20] *Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey*, 27 F.4th 886, 888 (3d Cir. 2022) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

[21] *See, e.g., Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 386–88 (D.N.J. 2015).

[22] *Id.* at 387 (quoting *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009)).

[23] *See E.E.O.C.*, 850 F.2d at 971.

[24] *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1173 (11th Cir. 1982).

[25] *See, e.g., Spellman*, 150 F. Supp. 3d at 388 (finding *Haydu* unpersuasive because it violates the Supreme Court's strict directive to exercise our jurisdiction); *Cent. States Indus. Supply, Inc. v. McCullough*, 218 F. Supp. 2d 1073, 1093 (N.D. Iowa 2002) ("[A]n examination of legal precedent among the federal courts reveals overwhelming support for the application of the first-filed rule to concurrent actions only as between federal courts.").

[26] *Smith & Wesson*, 27 F.4th at 888.

[27] *Bd. of Trustees of Trucking Emps. of N.J. Welfare Fund, Inc. - Pension Fund v. Centra*, 983 F.2d 495, 505 (3d Cir. 1992).

[28] *Id.* (citing *Temple Univ. v. White*, 941 F.2d 201, 212 (3d Cir. 1991)).

[29] *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993).

[30] *Harris v. Pernsley*, 755 F.2d 338, 342 (3d Cir. 1985) (citing *Bearoff v. Bearoff Bros., Inc.*, 327 A.2d 72 (Pa. 1974)).

[31] *Id.* (quoting *Safeguard Mut. Ins. Co. v. Williams*, 345 A.2d 664, 668 (Pa. 1975)).

[32] *See* Fed. R. Civ. P. 8(c)(1) (listing res judicata as an affirmative defense); *see also Moffitt v. Tunkhannock Area Sch. Dist.*, No. 39-00899, 2020 WL 5819765, at *3 (M.D. Pa. Sept. 30, 2020) (the similar defense of issue preclusion is "an affirmative defense that the moving party must prove"), *aff'd sub nom. Moffitt v. Farr*, 854 F. App'x 467 (3d Cir. 2021).

---

[33] *Moffitt*, 2020 WL 5819765, at *3 (citing *Perelman v. Perelman*, 125 A.3d 1259 (Pa. Super. Ct. 2015)).

[34] *See* ECF Doc. No. 15-2 at 7 ("In analyzing the four prongs of this test we see that the only prong not fully met is the second, as there has not yet been a final judgment on the merits."); *id.* ("[I]ssue preclusion would still dictate the outcome of the federal case *after* the state court decision has been rendered." (emphasis added)); *id.* at 7–8 ("[W]hen the state court makes its final determination, this judgment *will act* as issue preclusion and claim preclusion as well." (emphasis added)).

[35] ECF Doc. No. 15-2 at 8.

[36] *See E.E.O.C.*, 850 F.2d at 971.

[37] A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility ... a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that ... 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' ... in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations ... and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'..., we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

[38] *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).

[39] *See* ECF Doc. No. 1 ¶ 41; *id.* at Ex. A.

[40] *See* ECF Doc. No. 1 ¶ 37; *id.* ¶ 48.

[41] *Compare* ECF Doc. No. 15-2 at 8 (arguing the Complaint shows Mr. Fondren was terminated without cause), *with* ECF Doc. No. 1 ¶ 47 (alleging DelphX terminated Mr. Fondren for cause).

[42] ECF Doc. No. 1 ¶ 39.

[43] *Hooker v. State Farm Fire & Cas. Co.*, 880 A.2d 70, 77 (Pa. Commw. Ct. 2005) (distinguishing between general and special damages).

[44] "[T]he 'internal affairs doctrine' holds that courts look to the law of the state of incorporation to resolve issues involving the internal affairs of a corporation." *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 179 n.10 (3d Cir. 2005). "The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs — matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders — because otherwise a corporation could be faced with conflicting demands." *Eddystone Rail Co., LLC v. Bridger Logistics, LLC*, No. 17-495, 2018 WL 11376024, at *1 n.1 (E.D. Pa. Nov. 20, 2018) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982)). It applies to "matters which are peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *Id.* (citing *Norman v. Elkin*, 860 F.3d 111, 122 (3d Cir. 2017)). Pennsylvania has statutorily codified the internal affairs doctrine. *See* 15 Pa. Stat. and Cons. Stat. Ann. § 4145(a) (requiring courts to apply the law of the state of incorporation in actions relating a foreign corporation's "internal affairs").

The internal affairs corporation appears to apply. DelphX is a Delaware corporation. *See* ECF Doc. No. 1 ¶ 7. It sues its former director, Mr. Fondren, for breaches of fiduciary duties arising under Delaware law. *Id.* at 10–13. Mr. Fondren's duties to the corporation are peculiar to his former position as a director of DelphX. So we apply Delaware law today to DelphX's claims for breach of fiduciary duty.

[45] *Est. of Eller v. Bartron*, 31 A.3d 895, 897 (Del. 2011).

[46] *See Crescent/Mach I P'ship, L.P. v. Turner*, No. 17455, 2007 WL 2801387, at *4 (Del. Ch. May 2, 2007) (directors of Delaware corporations owe fiduciary duties of care and loyalty to the corporation).

[47] *In re Orchard Enters., Inc. S'holder Litig.*, 88 A.3d 1, 33 (Del. Ch. 2014) (quoting *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993)).

[48] *See* ECF Doc. No. 1 ¶¶ 59, 68.

---

[49] *In re Riverstone Nat'l, Inc. S'holder Litig.*, No. 9796, 2016 WL 4045411, at *9 (Del. Ch. July 28, 2016).

[50] *Id.* (quoting *Broz v. Cellular Info. Sys., Inc.*, 673 A.2d 148, 155 (Del. 1996)).

[51] *Cause of Action for Misappropriation of Corporate Opportunity*, Cecily Fuhr, 85 Causes of Action 2d 201 § 6 (a "typical" opportunity constituting an usurpation claim is "setting up a business that competes with the corporation of which the person is an offer or director").

[52] ECF Doc. No. 1 ¶ 20.

[53] *Id.* ¶ 36.

[54] *Id.* ¶ 37.

[55] *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 727 (E.D. Pa. 2014).

[56] ECF Doc. No. 1 ¶ 72.

[57] *Id.* ¶ 37(d).

[58] *Id.*